**636**

Gentry Eugene McDONALD,
Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

March 11, 1974.

Certiorari Denied by Supreme Court
June 17, 1974.

McKenzie & McKenzie, Dayton, for plaintiff-in-error.

David M. Pack, Atty. Gen., Phillip W. Brooks, Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Pikeville, for defendant-in-error.

## OPINION

OLIVER, Judge.

Represented by retained trial counsel, McDonald was convicted on June 22, 1972 in the Circuit Court of Rhea County of assault with intent to commit a felony and was sentenced to not less than one nor more than five years in the penitentiary (TCA § 39–603), under an indictment returned April 5, 1971 charging him with carnal knowledge of Joyce McDonald, a female under 12 years of age (TCA § 39–3705) in February of that year. The trial court found the defendant indigent after overruling his motion for a new trial and appointed the same attorneys to represent him in his appeal in the nature of a writ of error to this Court.

Although the trial judge did not sign the Bill of Exceptions until 29 days after expiration of the 90 days allowed therefor when the new trial motion was overruled, it was properly filed with the trial court clerk within the 90 days. TCA § 27–110.

By his first, second and sixth Assignments of Error, the defendant challenges the validity of the verdict upon the usual ground that the evidence preponderates against it and in favor of his innocence. As the Supreme Court of this State and this Court have said so often, in considering this contention we must adhere to the rule that the jury's verdict of guilt, ap-

proved by the trial judge, strips the defendant of the presumption of innocence and he stands before this Court presumed to be guilty and has the burden here of demonstrating that the evidence preponderates against the verdict and in favor of his innocence; that the verdict so approved accredits the testimony of the prosecution witnesses and establishes the State's theory of the case; that we may review the evidence only to determine whether it preponderates against the verdict, and in doing so we are required to take the verdict as having established the credibility of the State's witnesses; and that the verdict may not be overturned on the facts unless the evidence clearly preponderates against it. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S. W.2d 799; Chadwick v. State, 1 Tenn.Cr. App. 72, 429 S.W.2d 135.

We shall summarize the material evidence as briefly as is consistent with a clear presentation of the salient facts.

The defendant's daughter Joyce McDonald testified that in January and February of 1971 she and her brother and sisters were living with the defendant at the home of their paternal grandmother, and that she was eight years old at that time; that the custody of the children had been awarded to the defendant following a divorce after the court found their mother to be unfit; that one day in February, while she was playing cards with a younger sister, the defendant, who appeared to have been drinking, came into the house and lay down on the sofa and motioned to her with his eyes; that when she shook her head the defendant pointed his finger at her, indicating that she was to go into the bedroom; that she went into the bedroom and the defendant came in and closed the door; that they removed their clothes and the defendant made her lie down on the bed, got on top of her and had sexual relations with her; that she did not cry or scream because she was afraid of her father; that after they dressed she went back into the living room; that the same or next day she went to the home of her maternal grandmother who questioned the condition of her undergarments and she divulged what had happened; that at the time of the episode in the bedroom, her paternal grandmother was in the living room but she did not tell her about it because she was afraid of what the defendant would do to her if she did so; and that he had sexual relations with her four or five times but she did not know how far he penetrated her.

Anna McDonald, one of the defendant's daughters, who was almost 14 at the time of the trial (June 22, 1972) testified that while watching the television she saw the defendant and Joyce go into the bedroom; that her other sisters and her brother and Grandmother McDonald were there; that the defendant was "kindly drunk"; that she continued to watch TV for a little while and "I prayed to the Lord" and then went into her father's bedroom and saw him and Joyce under the cover and saw movement and ran back into the living room when her father's arm came out from under the cover; that Joyce, appearing upset, later came into the living room; that one time she saw Joyce come out of the bedroom crying and that her father said Joyce was sick, but she did not believe his statement to be true.

Mrs. Della Gilliam, the children's maternal grandmother, testified that occasionally they visited her on week-ends; that on February 6, 1971 the defendant brought the children's clothes for her to wash; that she found a bloody discharge on a pair of panties and learned that they belonged to Joyce and asked Joyce whether her father or her brother did this to her and she replied it was her father; that the next night she took Joyce to a doctor and he said she was swollen too much for an examination and she and Joyce's mother took her back to the doctor the next day.

Doctor Ernest Foresten, who examined Joyce on February 7, 1971, testified that she had gonorrhea with gross swelling of

the vagina; that the hymen was not broken; that, at the minimum, swelling would occur with 24 to 48 hours after contact with an infected person, although the usual period was 12 to 14 days; that gonorrhea is usually transmitted by sexual contact, but can possibly be transmitted by other means; that the body can cure itself of gonorrhea, but it generally takes two weeks for this to occur; that it would be impossible to determine if there had been slight penetration; that it would be impossible for the vagina of an eight-year-old girl to accept full penetration of an average male organ, but that a male organ could contact the vagina of a small girl without complete injection into the vaginal canal without causing any break or puncture; and that he examined the defendant about two weeks after examining Joyce and he did not have gonorrhea.

Mrs. Alice McDonald, the defendant's mother, testified as the first defense witness that after his divorce his ex-wife had custody of the children but their custody was later awarded to him and he and the children lived at her house; that he was not drinking when he returned home on February 5; that she closely supervised the children and never saw the defendant in bed with Joyce; that they never complained about the way the defendant treated them; that there was no way the defendant could have had his daughters in bed with him without her knowing it; that the children were not in her home on February 6th, the date charged in the indictment. She testified that while the defendant was in jail she asked the sheriff on three or four different days to have him examined for gonorrhea, and that he was examined after he had been in jail about 12 days when his attorney requested such an examination.

Wesley McDonald, the defendant's 15-year-old son, testified as a defense witness that his father did not take any of his sisters into the bedroom and his parental grandmother supervised the girls closely; that he and the girls occasionally spent the week-end with their maternal grandmother and sometimes their mother and two other women were there also; that the girls slept with their mother and the other women; that he heard his maternal grandmother and his mother talking about getting rid of the defendant; that he had previously testified at the preliminary hearing (1) that Joyce and their sister Jamie were playing cards and Joyce was scratching herself and the defendant made her go into the bedroom; (2) that he went around the house, looked into the window and saw the defendant talking with Joyce; (3) that neither of them was undressed and the defendant did not get on top of her. He said that this was in February of 1971, and they had lived there since their father regained their custody in October 1970, and that it was in the summer of 1970 that their mother took them to live with their maternal grandmother; that he had been living with his maternal grandparents since the defendant was arrested and did not like them because they insisted that he not stay out late at night, and that he is partial to his father; that one time while they were living with his paternal grandmother she got after him for "messing" with his little sister Kay. He said that on Friday (which would be February 5, 1971) all the children went to their maternal grandmother's home, but he and three of the girls returned to their paternal grandmother's home with the defendant; that he and the other girls went back to their maternal grandmother's home Saturday (February 6) and all the girls remained there but he and his father returned to his paternal grandmother's house, and that Joyce was not there either that day or that night; that his father was arrested Sunday (Februrary 7) and that he heard him ask the sheriff 20 or 25 times to take him to the doctor for an examination.

Hazel Hutsel, the defendant's aunt testifying as a defense witness, said that the defendant's ex-wife requested her to call the maternal grandmother and ask her to stay with the children; that during the course of the telephone conversation the

maternal grandmother said she might have the defendant sent away for her daughter.

The defendant testified that he never imposed himself sexually on his daughters; that he did not sexually molest Joyce; that he has slapped Joyce's hand for scratching around her panties, which seemed to be a habit; that he first heard that Joyce had gonorrhea on February 8 and he asked the next day to be examined but was not examined until 12 days later despite numerous requests; that he has never had gonorrhea and that he did not tell Deputy Walt Kaylor that he did not need to see a doctor.

Homer Patton testified as a defense witness that he and the defendant were in the jail at the same time and he heard the defendant and his mother request two or three times that the defendant be taken to the hospital.

Walt Kaylor testified as a rebuttal witness that he had orders from the prosecution to take the defendant to the hospital if he wanted to go; that the defendant said there was nothing wrong with him and he did not want to go to the hospital, but asked to be taken several days later.

In rebuttal, Anna McDonald testified that her father had sexually molested her four or five times at her paternal grandmother's house, that his testimony to the contrary was false, and that she was also infected with gonorrhea, and reiterated that she saw the covers moving when the defendant and her sister were in bed.

Joyce McDonald testified in rebuttal that before coming to court her brother Wesley told her to lie if she really loved the defendant, and that his testimony to the contrary was false.

The defendant contends that the evidence is insufficient to warrant and sustain the verdict because Joyce McDonald's testimony that he had intercourse with her was refuted by Dr. Foresten, and the State presented no evidence that the defendant

attempted to commit a felony. That is, the defendant insists he was either guilty as charged or not guilty of any offense.

In Walker v. State, 197 Tenn. 452, 273 S.W.2d 707, in which the examining doctor testified that in his opinion there had been no penetration and would not say there had been a partial penetration, the Court said:

" . . . As to this question all he could say or did say was 'that I could not determine, sir'. This argument though is to us as it was to the jury, who heard the doctor's testimony as well as the little girl's and the man and the others, the jury believed that under the law as given them that there had been a partial penetration.

\*     \*     \*     \*     \*     \*

" . . . In a very recent case, '1950' the Supreme Court of North Carolina, State v. Bowman, 232 N.C. 374, 61 S.E. 2d 107, 108, said:

'There is "carnal knowledge" or "sexual intercourse" in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient. G. S. § 14–23; State v. Monds, 130 N.C. 697, 41 S.E. 789; State v. Hargrave, 65 N.C. 466; State v. Storkey, 63 N.C. 7; Burdick: Law of Crime, Section 477; 44 Am.Jur., Rape, Section 3; 52 C.J. Rape, Sections 23, 24.'

"This statement from the North Carolina Supreme Court is clearly in line with the overwhelming weight of modern authority. We think that unquestionably it is sound and adopt it as the rule applicable in Tennessee."

■ From the evidence, the jury could have found slight penetration sufficient to constitute carnal knowledge, although such penetration could not be medically demonstrated, and such a finding would not be

inconsistent with the testimony of Dr. Foresten or Joyce McDonald.

Obviously, the offense of having carnal knowledge of a female under 12 years of age is initiated by an assault with intent to commit a felony—that felony, and the latter offense is necessarily included in the former. A defendant may be found guilty of any offense which is necessarily included in the offense with which he is charged. When one is put on trial on a single charge of felony he is also on trial for all its lesser included offenses. Strader v. State, 210 Tenn. 669, 362 S.W.2d 224; Clark v. State, 214 Tenn. 555, 381 S.W.2d 898; Bartlett v. State, 1 Tenn.Cr.App. 60, 429 S.W.2d 131; TCA § 40–2520.

Thus, if there are facts to substantiate any of the lesser degrees of the offense, and the jury so finds and this is approved by the trial judge, then it is not error for the jury to convict of the lesser included offense even though the final act constituting the higher offense was committed. Jones v. State, 200 Tenn. 429, 292 S.W.2d 713.

Since the evidence was sufficient to support conviction for the greater offense charged, the defendant cannot complain of the jury finding him guilty of the lesser offense. Bartlett v. State, supra; Reagan v. State, 155 Tenn. 397, 293 S.W. 755.

■ The third assignment complains that in returning its verdict of assault with intent to commit a felony the jury did not designate a particular felony. The fourth Assignment says the verdict was void for uncertainty because "the lesser offense included in the indictment contained two separate offenses which defined 39–606 and 39–603." And the eighth Assignment is that the court erred in pronouncing judgment upon him because he was not convicted of any specific offense and the verdict was void for uncertainty. Although neither of those three questions was raised in the defendant's motion for a new trial, they are sufficiently answered and disposed of by what we have just said.

The fifth Assignment complains that the court permitted Anna McDonald to testify in rebuttal. And his seventh Assignment is that Walt Kaylor was erroneously permitted to give rebuttal testimony. In attempting to raise those questions here, McDonald confronts an insuperable difficulty. He did not raise them in his motion for a new trial.

■ Absent any patent invalidating error, the law is settled in this State that the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and Assignments of Error which were not incorporated in the new trial motion will not be considered on appeal. Hughes v. State, 3 Tenn.Cr.App. 602, 465 S.W.2d 892; Nelson v. State, Tenn.Cr.App., 470 S.W.2d 32; Rule 14(4) and (5), Rules of Supreme Court of Tennessee—adopted by this Court. Consequently, questions raised for the first time on appeal will not be considered. Hancock v. State, 1 Tenn.Cr. App. 116, 430 S.W.2d 892; State ex rel. Carroll v. Henderson, 1 Tenn.Cr.App. 427, 443 S.W.2d 689; Pruitt v. State, 3 Tenn. Cr.App. 256, 460 S.W.2d 385.

Let the judgment of the trial court be affirmed.

WALKER, P. J., and GALBREATH, J., concur.