IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 22, 2005 Session

## STATE OF TENNESSEE v. THOMAS DAVID COLLINS, ALIAS

**Appeal from the Criminal Court for Knox County**
**No. 67229   Ray L. Jenkins, Judge**

———————————

**No. E2004-01133-CCA-R3-CD - Filed July 29, 2005**

———————————

The appellant, Thomas David Collins, was convicted by a jury of voluntary manslaughter.  As a result, the trial court sentenced the appellant to five (5) years as a Range I, standard offender.  After the denial of a motion for new trial, the appellant filed a timely notice of appeal.  On appeal, the appellant claims that: (1) the jury did not properly reject the appellant's claim of self-defense; (2) the evidence was not sufficient to sustain the verdict; (3) the trial court improperly applied several enhancement factors; and (4) the trial court improperly denied the appellant alternative sentencing.  After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

M. Christopher Coffey, Knoxville, Tennessee, for the appellant, Thomas David Collins.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; Randall E. Nichols, District Attorney General; Zane Scarlett, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In November of 1998, the appellant was indicted by the Knox County Grand Jury for second degree murder in the death of Edward James.  A jury trial was held on October 27-28, 2003.

At trial, the evidence indicated that on November 5, 1998, the victim took his nine-year-old stepson, James Bomar, to basketball practice at the New Hope Recreation Center.  When they arrived at the Center, the gates were locked.  The victim and Mr. Bomar waited in their car at the gate for

the coach to arrive. The appellant was raking leaves at his home across the street from the Center. As the victim and Mr. Bomar were waiting, the appellant walked from his yard toward the car and asked the victim why he was parked on the side of the road. The victim informed the appellant that they were waiting on the gate to the Center to be opened, in order for Mr. Bomar to attend basketball practice.

Mr. Bomar testified that, at that time, the victim asked if that was all the appellant needed. Mr. Bomar stated that the men were "talking calmly." The appellant responded, "I don't see why that's all I need to know." At that point, the victim said, "Look, don't make me get out of the car and kick your ass" in a "frustrated" tone. The victim then got out of the car, went to the trunk and retrieved a baseball bat. Mr. Bomar testified that after the victim got the bat out of the trunk, the victim pointed the bat at the appellant and told witnesses on the lawn to "come get this fool." Mr. Bomar claimed that the victim then started to lower the bat when the appellant stepped back, removed a gun from his jacket and shot the victim in the chest. Mr. Bomar heard the victim fall to the ground and moan. Mr. Bomar witnessed the events from the passenger seat of the car and had to turn around in his seat in order to see what was going on outside. He could hear most of the conversation between the appellant and the victim because there was a large hole in one of the car's windows. At that point, Mr. Bomar testified that the appellant went to his truck, got something to drink and came back to stand over the victim. Mr. Bomar claimed that the appellant "walked kind of funny . . . kinda swayed back and forth when he walked." Mr. Bomar remained in the car until other people arrived on the scene. The victim died from his wounds.

Knoxville Police Officer Robert Taylor testified that as he arrived on the scene he noticed two (2) men, one lying on his back and the other on top of him face down with his head about chin level of the other man. Officer Taylor instructed the appellant several times to remove his hands from the victim. The appellant finally complied, and Officer Taylor handcuffed the appellant and conducted a pat-down search of the appellant's person. During the search, Officer Taylor recovered a handgun in the appellant's right vest pocket. Officer Taylor commented that the appellant had a "fairly" strong odor of alcohol about his person. Officer Taylor noticed that the victim's son was still sitting in the car at the time he arrived on the scene.

Officer Roger Scott Solomon of the Knoxville Police Department also responded to the dispatch call on the night of November 5. When he arrived on the scene, he read the appellant his Miranda rights. Officer Solomon believed that the appellant was "definitely intoxicated." Officer Solomon was instructed to transport the appellant from the scene to UT Hospital for a blood test.[1]

Investigator Gary Jones of the Knoxville Police Department recalled that the appellant had a strong odor of alcohol about his person the night of the incident. Investigator Jones spoke with Mr. Bomar the day after the incident. Mr. Bomar told Investigator Jones that the victim actually swung the bat at the appellant and that the appellant told the victim to "stay back" twice before the appellant shot the victim.

---

[1]From the testimony, it appears that the results of the blood test were either lost or destroyed.

William Shaun Collins, the nephew of the appellant, lived at the residence across from the Center with his grandmother, grandfather and uncle. On the night of November 5, Mr. Collins and his friend "Woody" got home from the mall. When they pulled into the driveway, the appellant was outside raking leaves and there was a car parked across the street. Mr. Collins took his packages into the house then came back outside. At that time, he "noticed a man get out of his car in a rage - -," go back to the trunk and pull out a bat. Mr. Collins claims that the victim pointed the bat at the appellant and stated, "I'm going to open you up, motherfucker." At that point, Mr. Collins claims the victim came toward the appellant. According to Mr. Collins, the appellant told the victim to step back and stop two (2) times. Mr. Collins testified that the victim started swinging the bat at the appellant when he heard a gunshot, saw the victim stumble back across the road and fall on his own car. According to Mr. Collins, the appellant yelled for someone to call the police and started to perform CPR on the victim.

Teri Arney, a criminalistic officer with the Knoxville Police Department, testified that the bullet that killed the victim was shot from the appellant's gun. She also testified that the victim was shot from a distance of at least five (5) feet away.

Sandra K. Elkins, the Knox County Medical Examiner, testified that she performed an autopsy on the victim and was able to conclude that the victim died as a result of a gun shot wound to the chest.

At the conclusion of the two (2) day trial, the jury found the appellant guilty of voluntary manslaughter, a lesser-included offense of second degree murder. After a sentencing hearing, the trial court sentenced the appellant to five (5) years as a Range I, standard offender. The appellant filed a timely notice of appeal. On appeal, the following issues are presented for our review: (1) whether the jury properly rejected the appellant's theory of self-defense; (2) whether the evidence was legally sufficient to support the verdict; (3) whether the trial court properly enhanced the appellant's sentence; and (4) whether the trial court properly denied the appellant alternative sentencing.

## Self-Defense

The appellant argues on appeal that "this was a classic case of self-defense based on uncontraverted proof that [the appellant] was being attacked by an assailant armed with a baseball bat." As a result, the appellant claims that the State failed by not proving beyond a reasonable doubt that the appellant did not act in self-defense. The State contends that the evidence is sufficient to support the jury's rejection of the appellant's self-defense argument.

Tennessee defines self-defense as follows:

A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must

have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a). Self-defense requires a reasonable belief that "force is immediately necessary to protect against the other's use or attempted use of unlawful force" and that there was an "imminent danger of death or serious bodily injury" to the defendant. Tenn. Code Ann. § 39-11-611(a). When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. State v. Sims, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

It is obvious in this case that the jury chose to reject the appellant's claim of self-defense. The testimony concerning the events immediately prior to the appellant's attack on the victim was contradictory. The jury could have decided that Mr. Collins, the witness for the appellant who testified that the appellant asked the victim to back away two (2) times prior to shooting the victim, was untruthful and that Mr. Bomar, despite his previous statements to police, testified truthfully that the victim was standing with the bat at his side when the appellant shot the victim. It was within the jury's purview to reject the self-defense theory. See State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). While this case presents a close question, we conclude that the evidence was sufficient for the jury to find that the appellant's actions were not consistent with the defense of self-defense.

### Sufficiency

The appellant next complains on appeal that the evidence is insufficient to support the jury's verdict of voluntary manslaughter. The State argues that "the record clearly supports that the evidence is legally sufficient to support his conviction."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.

-4-

Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). When attacking the sufficiency of his voluntary manslaughter conviction, the appellant argues that the record is devoid of any proof that the appellant was "in a state of passion produced by adequate provocation." The appellant argues that the proof reveals that the appellant was calm throughout the incident and even warned the victim twice in an effort to avoid the conflict. The State counters that the appellant approached the victim while the victim was "peacefully sitting in his car with his step-son" and that after exchanging a few words, the appellant made "aggressive statements" toward the victim. The State argues that the victim then exited his car, retrieved a bat from his trunk and asked the witnesses to "come get this fool." Furthermore, the State points to evidence that the bat was lowered to the victim's side when the appellant shot and killed the victim. Thus, the State contends that the evidence supports the appellant's conviction and that the jury reasonably rejected the appellant's version of events.

After reviewing the evidence, we conclude that the evidence presented was sufficient to support a conviction of the appellant's indicted crime of second degree murder. See Tenn. Code Ann. § 39-13-210(a)(1). A reasonable jury could have determined that the appellant pulled a handgun out of his vest and knowingly shot the appellant to death while the appellant stood with a bat lowered by his side. Accordingly, because the evidence was sufficient to support a second degree murder conviction, it was also sufficient to support a conviction for the lesser-included offense of voluntary manslaughter. See State v. Dominy, 6 S.W.3d 472, 477 n.9 (Tenn. 1999) (noting that "voluntary manslaughter is a lesser-included offense of first and second degree murder"). Furthermore, when "the evidence [is] sufficient to support [a] conviction for the greater offense charged, the defendant cannot complain of the jury finding him guilty of the lesser offense." McDonald v. State, 512 S.W.2d 636, 640 (Tenn. Crim. App. 1974); see also State v. Carrie Ann Brewster and William Justin Brewster, No. E2004-00533-CCA-R3-CD, 2005 WL 762604, at *3 (Tenn. Crim. App., at Knoxville, Apr. 5, 2005) (citing McDonald for the same proposition). Accordingly, this issue is without merit.

## Sentencing

Next, the appellant complains that the trial court committed error by sentencing him above the presumptive minimum in light of Blakely v. Washington, 542 U.S.___, 124 S. Ct. 2531. Specifically, the appellant contends that the "only enhancement factor that could be considered by the Court in this case would be enhancement factor (2), that the appellant has a previous history of criminal convictions. Applying factors (9), (10), (11) and (17) violated the Blakely principles." The appellant also argues that the trial court should have applied various mitigating factors. The State conceded at oral argument that the trial court improperly applied two (2) enhancement factors.

Since the parties filed briefs and this Court held oral argument on the case herein, the Tennessee Supreme Court has determined that Blakely did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." State v. Edwin Gomez, 163 S.W.3d 632, 651, n.16 (Tenn. 2005). In Gomez, the court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington, 542 U.S.___, 124 S. Ct. 2531 (2004), United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), or United States v. FanFan, the case consolidated with Booker, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." Gomez, 163 S.W.3d at 661. Accordingly, this issue is without merit.

The appellant also claims that the trial court should have applied mitigating factors (2), (3), (11), (12) and (13). See Tenn. Code Ann. § 40-35-113. However, the appellant's brief contains only a blanket statement that the trial court should have applied these mitigating factors without accompaniment by argument, citation to authority, or citation to the record. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." See also State v. Sanders, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). The appellant fails to cite any authority, argument, or appropriate references to the record for his claim. Therefore, this issue is waived.

Denial of Alternative Sentence

Lastly, the appellant complains that the trial court should have imposed an alternative sentence in lieu of incarceration. Specifically, the appellant claims that there is "insufficient evidence to overcome the statutory presumption that the appellant is a favorable candidate for alternative sentencing." The State argues that the trial court properly denied alternative sentencing.

"When reviewing sentencing issues . . ., the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In regards to alternative sentencing Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less is an offender for whom incarceration would result in successful rehabilitation . . . ." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a). The appellant herein was convicted of voluntary manslaughter, a Class C felony. Thus, the appellant was presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Further, as a Range I, Standard Offender convicted of and sentenced to less than eight (8) years for the offense, the appellant was eligible for probation. See Tenn. Code Ann. §§ 40-35-102(6) & -303(a); Byrd, 861 S.W.2d at 379-80. However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 229, 235

(Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if :

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06.

In the case herein, the trial court learned that the appellant shot and killed the victim while the victim's nine-year-old stepson was sitting in the car witnessing the events. While the appellant expressed remorse for his actions, the record indicated that the appellant had previously been placed on probation for convictions for assault and battery as well as public drunkenness. The record contained a revocation warrant indicating that the appellant failed to report to his probation officer, failed to carry out instructions given by his probation officer, did not follow the special conditions given by the court and did not pay court costs while on probation.

After listening to the evidence at the hearing on alternative sentencing, the trial court determined:

> The class of conviction is a Class C felony, carrying the full range of punishment of not less than three years nor more than fifteen. The defendant being a Range I, Standard Offender, his range of punishment is not less than three years nor more than six.

> The Court has had the benefit of the receipt of evidence at the trial, the statement of counsel, the presentence investigation report, which has been filed as an exhibit, as well as the statement of the deceased's mother and aunt. Statement of counsel, if I have not mentioned that.

All right.  Sentencing considerations are contained in 40-35-103.  The Court finds that subsection (B) is applicable: Confinement is necessary to avoid depreciating the seriousness of the offense - - and (C): Measures less restrictive have been applies [sic] unsuccessfully to the defendant.

Now gentlemen, the subsection (6) under (B) requires that the Court hear a statement the defendant wishes to make in his own behalf about sentencing, and if he wishes to do that, I'll hear him.

. . . .

Okay.  All right.  In Cause 67229, on the verdict of the jury, it is the judgment of the court that you be confined in the State Penitentiary for a period of five years, be rendered infamous.  You're sentenced as a Range I, Standard Offender.

. . . .

All right.  The Court has considered the defendant's interest, behavioral record, employment history, social history, present condition, including physical and mental, interest of the public, need of deterrence, the kind of crime.

. . . .

All right.  All require the imprisonment of the defendant for his own best interest and especially for the protection of the public.  Probation will be denied.

As stated previously, we review sentencing issues with the presumption that the determinations made by the trial court are correct so long as the trial court followed sentencing procedures.  Tenn. Code Ann. § 40-35-401(d).  The trial court herein primarily denied alternative sentencing  in order to avoid depreciating the seriousness of the offense and because measures less restrictive than incarceration had been applied to the appellant previously and failed.  These factors are both appropriate considerations for providing a proper basis for the denial of alternative sentencing.  See Tenn. Code Ann. § 40-35-103(1)(B) & (C).

The appellant correctly notes that in order to deny alternative sentencing based on Tennessee Code Annotated section 40-35-103(1)(B), the circumstances of the offense must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree.  See State v. Fields, 40 S.W.3d 435, 441 (Tenn. 2001).  We conclude that the proof satisfies this requirement.  The evidence shows that after some type of verbal exchange, the appellant pulled a gun from his vest pocket and shot and killed the appellant while his nine-year-old stepson sat in the car witnessing the event.  Further, the record supports the trial court's denial of probation based

on the previous failure of less restrictive measures. As noted above, the appellant had previously been placed on probation for assault and battery and public drunkenness. The presentence report indicated that the appellant's probation was revoked for failure to comply with the conditions of probation. Accordingly, the trial court herein considered the sentencing principles as well as the facts and circumstances of the case and properly denied the appellant alternative sentencing. This issue is without merit.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE