IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

## STATE OF TENNESSEE v. LEWIS CHRISTIAN

**Appeal from the Criminal Court for Shelby County**
**No. 02-07506     Bernie Weinman, Judge**

_____

**No. W2004-01688-CCA-R3-CD  - Filed June 1, 2005**

_____

A Shelby County jury convicted the defendant, Lewis Christian, of voluntary manslaughter. *See* Tenn. Code Ann. § 39-13-211(a) (2003). Accordingly, the trial court sentenced the defendant to serve a ten-year incarcerative sentence as a Range II multiple offender. Aggrieved of his conviction and sentence, the defendant now brings this direct appeal. After thoroughly reviewing the record and applicable law, we affirm the defendant's conviction and sentence.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. McLIN, JJ., joined.

Robert Wilson Jones, Shelby County Public Defender; and William Moore and Garland Erguden, Assistant Public Defenders, for the Appellant, Lewis Christian.

Paul G. Summers, Attorney General & Reporter; Richard H. Dunavant, Assistant Attorney General; William L. Gibbons, District Attorney General; and Emily Campbell, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The victim, Ralonzo Robinson, a.k.a. "Buddy Boy," was a good friend of the defendant's uncle, Earl Davis. The victim accompanied the defendant and the defendant's girlfriend on a road trip to Illinois where the defendant, who dealt drugs, planned on conducting some business. However, while they were in Illinois, the defendant was arrested for driving without a license. The defendant testified that when he was released from jail, he discovered that his gun and $257 were missing from his vehicle. According to the defendant, he confronted the victim about his missing possessions, and the victim became "upset" with the defendant. Thereafter, the defendant and his girlfriend returned to Memphis without the victim. The defendant testified that when he returned to Memphis, he went to his uncle's residence to check in on him. When he entered the residence, the victim pointed a gun at him, the two then struggled for the gun, and the defendant heard a

"boom" and then fled the house. After leaving the house, the defendant saw his cousin and told his cousin to call an ambulance. The defendant then called his uncle to tell him that his uncle's friend, the victim, had been shot in his uncle's house. The police contacted the defendant and advised him to come to the police station and give a statement. The defendant did not do so and was later arrested and charged with the second degree murder of the victim.

Testimony from police officers, the victim's mother, and the defendant's uncle revealed a different version of events. When police officers arrived at the scene of the shooting, the victim was lying on his back on the front lawn. The victim told the officers that he feared he was dying and that the defendant shot him because he refused to rob someone for the defendant when the two were in Illinois. The victim's mother also spoke with the victim while awaiting the arrival of an ambulance, and the victim told his mother that he had dragged himself out onto the front lawn because he did not want to die in the house.

Mr. Davis, the defendant's uncle, testified that when the defendant called him to tell him about the shooting, the defendant admitted that he had shot the victim.

Approximately two weeks after the shooting, the victim died as a result of complications from the shooting.

After hearing this evidence, the jury convicted the defendant of voluntary manslaughter, a lesser included offense of his indicted offense of second degree murder. The trial court accordingly sentenced the defendant to serve a ten-year incarcerative sentence as a Range II persistent offender. The defendant challenges the sufficiency of the evidence to support his voluntary manslaughter conviction and the trial court's application of certain enhancement factors to his sentence in violation of *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004). We hold that the defendant's conviction is supported by sufficient evidence and that the defendant's sentencing challenge must fail in light of our supreme court's recent decision in *State v. Gomez*, __ S.W.3d __, No. M2002-01209-SC-R11-CD, slip op. at 27 (Tenn. Apr. 15, 2005), *petition for reh'g filed*, (Apr. 2005).

## Sufficiency of the Evidence

The defendant contends that the evidence is insufficient to support his conviction of voluntary manslaughter. Our consideration of that claim is grounded in legal bedrock. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985); *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In determining sufficiency of the proof, the appellate court does not replay and re-weigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Simply stated, the reviewing court will not substitute its judgment for that of the trier of fact. Instead, the court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

With these principles in mind we must determine whether the evidence in this record is sufficient to support the jury's verdict. We begin with the definition of the conviction offense. Voluntary manslaughter is defined as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (2003). When attacking the sufficiency of his voluntary manslaughter conviction, the defendant argues that his conviction rests solely upon the victim's statement to the police that the defendant shot him intentionally and that this statement is insufficient to support his conviction. The state counters that the victim's statements and the physical evidence support the defendant's conviction and that the jury reasonably rejected the defendant's version of events.

After reviewing the state's evidence, we conclude that the evidence presented at the defendant's trial was sufficient to support a conviction of the defendant's indicted crime of second degree murder. *See* Tenn. Code Ann. § 39-13-210(a)(1) (2003). A reasonable jury could have found that the defendant was angry with the victim after the victim refused to participate in a robbery when the two were in Illinois. Therefore, when the defendant returned to Memphis, he located the victim at the defendant's uncle's house and shot him.

Accordingly, because the evidence was sufficient to support a second degree murder conviction, it was also sufficient to support a conviction for the lesser-included offense of voluntary manslaughter. *See State v. Dominy*, 6 S.W.3d 472, 477 n.9 (Tenn. 1999) (noting that "voluntary manslaughter is a lesser-included offense of first and second degree murder"). Furthermore, when "the evidence [is] sufficient to support [a] conviction for the greater offense charged, the defendant cannot complain of the jury finding him guilty of the lesser offense." *McDonald v. State*, 512 S.W.2d 636, 640 (Tenn. Crim. App. 1974); *see also State v. Carrie Ann Brewster and William Justin Brewster*, No. E2004-00533-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, Apr. 5, 2005) (citing *McDonald* for the same proposition). Accordingly, we find that the defendant's challenge to the sufficiency of his conviction evidence lacks merit.

Violation of Right to Jury Trial

The defendant next challenges his sentence on the basis that the trial court erroneously applied enhancement factors to his sentence in violation of his constitutional right to

trial by jury. Specifically, the defendant contends that the trial court applied two enhancement factors to his sentence and that pursuant to *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004), these enhancement factors cannot be applied absent a jury finding of their applicability. However, our Tennessee Supreme Court has recently held that notwithstanding the United States Supreme Court's holding in *Blakely*, the Tennessee sentencing structure does not run afoul of the Sixth Amendment. *State v. Gomez*, __ S.W.3d __, No. M2002-01209-SC-R11-CD, slip op. at 27 (Tenn. Apr. 15, 2005), *petitions for reh'g filed*, (Apr. 2005). Accordingly, the petitioner's allegation of error lacks merit.

In conclusion, none of the defendant's allegations merit relief, and therefore, the defendant's conviction and sentence are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE