# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MARCH SESSION, 1998



FILED

May 5, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,    )

     Appellee,    )

VS.    )

FREDERICK BEAUREGARD, )

     Appellant.    )

C.C.A. NO. 02C01-9712-CC-00457

HARDEMAN COUNTY

HON. JON KERRY BLACKWOOD
JUDGE

(Direct Appeal - Rape and Incest)


FOR THE APPELLANT:

GARY F. ANTRICAN
Assistant District Public Defender
P. O. Box 700
Somerville, TN 38068

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DOUGLAS D. HIMES
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN. 37243-0493

ELIZABETH RICE
District Attorney General

JERRY NORWOOD
Assistant District Attorney
302 Market Street
Somerville, TN 38068


OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On May 20, 1997, a Hardeman County jury convicted Appellant, Frederick Beauregard, of rape and incest. After a sentencing hearing, the trial court ordered Appellant to serve nine years at one hundred percent pursuant to Tennessee Code Annotated § 40-35-501(I)(1)&(2). The trial court also sentenced Appellant to three years as a standard Range I offender for the incest conviction; the sentence for incest was ordered to run concurrently with the sentence for rape. Appellant appeals from these convictions, raising three issues:

1) whether the evidence presented at trial was sufficient to establish sexual penetration;
2) whether the convictions for both rape and incest arising out of a single incident violate Appellant's right to due process of law; and
3) whether the convictions for rape and incest upon the same prohibited conduct violate the double jeopardy clauses of the United States and Tennessee constitutions.

After a review of the record, we affirm the judgment of the trial court.

## FACTS

The evidence presented at trial revealed that S.J.[1] is the daughter of Susan Stanley and Frederick Beauregard. S.J. was born on January 25, 1982, and lives with her mother and her maternal grandmother in Hickory Valley, Hardeman County, Tennessee.

On December 23, 1995, when S.J. was thirteen years of age, she asked her mother for permission for visit her paternal grandmother, Sarah Beauregard.

---

[1] It is the policy of this Court to protect the identity of child sex abuse victims to the extent circumstances permit.

Ms. Stanley gave S.J. permission to do so. S.J.'s uncle, Willie Jones, and her cousin, Elvis Morgan, drove her to her grandmother's house.

S.J. arrived at her grandmother's house around dark, only to learn that her grandmother had gone to the hospital. S.J. stayed and watched television, and then went into a room she identified as "Trudy's room" to make phone calls. While S.J. was lying on the bed in "Trudy's room," Appellant entered the bedroom. Appellant asked S.J. if she knew how to "nut" and whether she had ever had sex. Appellant then began feeling S.J.'s breasts. S.J. attempted to push Appellant away, but was unable to do so. Appellant took off S.J.'s clothing, pushing her jeans and panties down to her knees. S.J. testified that Appellant then "stuck his penis in" her genital area. Appellant was unsuccessful in inserting his penis fully into S.J.'s vagina. The telephone rang and Appellant got up to answer the phone. S.J. ran into the bathroom and refused to come out.

S.J. called Teresa Golden, a friend of S.J.'s mother's, who came and picked her up from the house. Ms. Golden testified that when S.J. got into the car she was 'hollering and crying." S.J. kept repeating over and over that she wished that she were dead. Ms. Golden took S.J. back to her house and called S.J.'s mother. While Ms. Golden was on the phone with S.J.'s mother, S.J. finally explained that "Frederick made me have sex with him." Ms. Golden drove S.J. to Hickory Valley where they met S.J.'s mother. The three then proceeded to the hospital.

At Boliver Community Hospital, Dr. Ram Madasu treated S.J.. Dr. Madasu testified that he examined S.J. but was unable to perform a full pelvic exam. Dr.

Madasu found seminal fluid at the fourchette hair, or the entrance to the vagina. He also prepared a sexual assault kit.

Sherri Harrell, a forensic serologist from the Tennessee Bureau of Investigation, analyzed the samples from the sexual assault kit performed on S.J.. Tests revealed that both spermatozoa and semen were on the vaginal slide and swab which Dr. Madasu took from S.J.'s body. Joe Minor, also a scientist with the Tennessee Bureau of Investigation, compared the samples from S.J.'s sexual assault kit and a blood sample given by Appellant. Minor's testing revealed a "very strong association" between the semen taken from S.J.'s genital area and Appellant's blood sample. Minor testified that Appellant could not be ruled out as the source of the semen. Minor testified that in his opinion, the semen found in S.J.'s genital area was from Appellant or another close relative of S.J..

## SUFFICIENCY OF THE EVIDENCE

Appellant initially concedes that the record supports a finding that Appellant sexually assaulted S.J.. However Appellant contends that the evidence did not prove beyond a reasonable doubt that he penetrated S.J., and hence that he committed rape. We do not agree. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is

originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (*citing* State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Mathews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, the Tennessee Rules of Appellate Procedure, Rule 13(e) provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." *See also* State v. Mathews, 805 S.W.2d at 780.

Rape is defined at Tennessee Code Annotated § 39-13-503 in applicable part as:

1. The unlawful sexual penetration of a victim by the defendant..., accompanied by

2. Force or coercion used to accomplish the act.

Tennessee Code Annotated § 39-13-501 (7) defines "sexual penetration" as:

> sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required.

In McDonald v. State, 512 S.W.2d 636 (Tenn. Crim. App. 1974) the Tennessee Supreme Court adopted the rule that

> There is 'carnal knowledge' or 'sexual intercourse' in a legal sense if there is the slightest penetration of the sexual organ of the female by the sexual organ of the male. It is not necessary that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient.

State v. McDonald, 512 S.W.2d 636, 639 (Tenn. Crim. App. 1974) (*quoting* State v. Bowman, 232 N.C. 374, 61 S.E.2d 107, 108 (N.C.1950) (citing State v. Monds, 130 N.C. 697, 41 S.E.789; State v. Hargrave, 65 N.C. 466; State v. Storkey, 63 N.C. 7; Burdick: Law of Crime, Section 477; 44 Am Jur., Rape, Section 3; 52 C.J. Rape, sections 23, 24.)). When viewed in the light most favorable to the State, the record clearly establishes that Appellant sexually penetrated S.J..

At trial, S.J. testified that Appellant penetrated her. The relevant testimony was elicited as follows:

> A: He asked me -- he started asking me some questions, do I know how to nut, and have I ever had sex and then he started feeling on me and stuff....First he started feeling my breasts and stuff.
>
> Q: And then what did you do or say?

A: I tried to put his hand off me, wanted to put his hand off.

Q: Okay. Now, then, what happened next?

A: He started taking my clothes and stuff off.

Q: And did he get your clothes off or part of the way off?

A: Yes, sir.

Q: And I take it you're still on the bed?

A: Yes sir.

Q: And so he was --started taking you clothes off, and then what happened?

A: Then he stuck his penis in me.

Q: Okay. Then what happened then?

A: It wouldn't go in. So the phone kept on ringing and then he answered it.

Q: All right. Then what were you doing while this was going on.

A: I was putting my clothes back on.

Q: When he was trying to put his penis in, what were you doing?

A: I tried to -- I told him to stop 'cause he was hurting me.


In addition, Dr. Madasu testified that he found semen in S.J.'s genital area, specifically in the area of the fourchette, the fold of skin at the base of the vaginal opening. Given that only slight penetration of the vulva or labia constitutes sexual penetration, this evidence is sufficient to sustain a finding beyond a reasonable doubt that Appellant sexually penetrated his daughter.

Appellant maintains that S.J.'s statement that "it wouldn't go in" taken in conjunction with a lack of physical trauma indicates no penetration occurred.

However, the jury could have concluded that S.J.'s reference to the lack of penetration concerned only a lack of vaginal penetration. In any event, any contradictions in the testimony are for the jury to resolve. Barge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. P. 1978).

This issue is without merit.

## DUE PROCESS

Appellant also contends that his convictions for rape and incest violate due process in that in this instance the crime of incest was "essentially incidental" to the crime of rape under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). Under the rule of State v. Anthony, the relevant inquiry is whether the act on which the incest conviction is based is essentially incidental to the accompanying rape and is not, therefore, sufficient to support a separate conviction for incest, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction. Id. at 306. In the matter sub judice, Appellant's act in having intercourse with his daughter is sufficient proof to support a prosecution for incest separate from the rape prosecution. The fact that the child he raped was his daughter is in no way essentially incidental to the rape itself. This issue is without merit.

## DOUBLE JEOPARDY

Appellant also argues that conviction for the crimes of rape and incest when based upon a single sexual act violate the constitutional prohibition against

-8-

double jeopardy. In <u>State v. Powell</u>, 1994 Tenn. Crim. App. Lexis 78, this Court held that convictions for rape and incest arising out of one sexual act do not violate double jeopardy. However after the <u>Powell</u> decision, in 1996 the Tennessee Supreme Court revisited the standard for determining double jeopardy in <u>State v. Denton</u>, 938 S.W.2d 373 (Tenn. 1996). Since <u>Denton</u>, neither this Court nor the Supreme Court has applied the law of double jeopardy as set out in <u>Denton</u> to the crimes of incest and rape. Due to the intervening change in our understanding of double jeopardy, we must apply the analysis set out in <u>Denton</u>, to determine whether Appellant's constitutional rights have been violated.

In <u>State v. Denton</u>, the Tennessee Supreme Court held that:

> resolution of a double jeopardy punishment issue under the Tennessee Constitution requires the following: (1) A <u>Blockberger</u> analysis of the statutory offenses; (2) an analysis, guided by the principles of <u>Duchac</u>, of the evidence used to prove the offenses;[2] (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

<u>State v. Denton</u>, 938 S.W.2d 373, 381 (Tenn. 1996). In its discussion of the new factors for determining double jeopardy violations, the Supreme Court used convictions for both aggravated rape and incest as an example of how under its holding a single act upon a solitary victim might constitutionally result in multiple convictions. <u>Id</u>. at 381. In so doing the Supreme Court noted that the elements

---

[2]<u>Duchac v. State</u>, 505 S.W.2d 237 (Tenn. 1973); utilized the so-called "same evidence test" in double jeopardy analysis.

of the two crimes were distinct and that the statutes served different purposes:

> one protects children under the age of thirteen years from sexual penetration and the other prohibits marriage or sexual intercourse between persons related within the prohibited degrees.

State v. Denton, 938 S.W.2d at 381 (*quoting* State v. Brittman, 639 S.W. 2d 652 (Tenn. 1982)). We find that under the Denton analysis, only factor (3) aids Appellant. Certainly the statutory elements of the two crimes are distinct: rape requires force or coercion, while incest requires intercourse by people within prohibited degrees of kinship. The evidence used to prove each crime varies, and as the Supreme Court stated in Denton (quoted above) the purpose of the respective statutes is different. The conclusion to be drawn from the Denton analysis is that conviction for both of these crimes arising from a single sexual act does not implicate double jeopardy concerns. This issue is without merit.

Therefore, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
JOE B. JONES, PRESIDING JUDGE

_____
GARY R. WADE, JUDGE